May it please the Court, I'm Deanna Lamb, appearing from the Central California Appellate Program, appointed on behalf of Frank Taylor. And in this case, the discriminatory pretext of the prosecutor deprived Mr. Taylor of equal protection under the Batson decision. Taylor did not receive a third-stage analysis because the trial court asked the prosecutor to give her some neutral reasons, mixed with neutral reasons, was one that was clearly pretext for bias and others that were not supported by the record. And I want to focus on Ms. D. and the reverse psychology reasoning, which was based on race. And I'm not arguing that the prosecutor in this case was a racist. That's not the viewpoint of Batson. He doesn't need to be labeled as a racist. It is a use of race as a reason why, in his opinion, Ms. D. would be biased and actually biased in favor of the prosecution. So there's something very similar from a recent decision, and that's Ali v. Hickman. And you could substitute the name of Ms. D. for the name of the potential juror in that case when it says, The circumstances the prosecutor cited that might affect M.C.'s impartiality logically would only create bias in favor of the prosecution, not the defense. To be believable, a prosecutor's reasons must be related to the particular case to be tried. And that's from Kessler at page 350. Or I'm sorry, not Kessler. It's from Hickman, Ali v. Hickman, at 1184. Ginsburg-McCarran, Jr.: Can I ask you about one of the reasons that the prosecutor gives? I think it's the last reason. He said that when she's asked if she had problems with law enforcement, she gave a very strong reaction and said, yes, I do. And the prosecutor said, since most of my witnesses are law enforcement agents, that's a problem. Are you saying that that reason was also pretextual? That particular reason about negative experience with law enforcement is not necessarily pretextual, but in that exchange, he referred to, and that was what we went into in the private session. Well, if you go back and you look at that private session, the discussion that the judge had with Ms. D. in Chambers, there was no discussion of negative experience with law enforcement. It was a negative experience because she had been the victim of two different crimes. It was just factually an error. Right. That's the – in this case, you have the contrary to as well as the unreasonable application. The contrary to is the judge said, I'm only looking for systematic exclusion, which is actually Swain v. Alabama. And then you have the unreasonable application. And that's one of those, under the facts of this case, it's unreasonable to say that that is a valid reason when that was not in that private discussion. And in that – So the prosecutor, in the record, it says that she, when he asked the group about negative experiences, Mrs. – the prospective jury provided a yes, a resounding yes, and then he later goes on to say, does anybody have personally any bad experiences or negative feelings towards law enforcement to the extent Ms. D. has quite a reaction? I'm sorry. I'm done. I'm just wondering why it is that you're saying that her reaction to that question is not a relevant factor the prosecutor could consider. Are you saying she didn't have such a reaction? Because there seems to be evidence in the transcript that she did have such a reaction. And if she did have such a reaction, why isn't that a valid consideration? This is the question, I think. Was – when he was referring to the negative experience with law enforcement, was he referring to what happened in Chambers, or was he referring to the fact that when he said to the – to the array in general, do you have any problems with law enforcement, and asked this question about fair shake, she gave some sort of a reaction to that? She gave some reaction which he then said that goes back to what we discussed in private, but what they discussed in private did not include any negative reaction to law enforcement. So he didn't ask a question. He moved on, and he's the one who's dismissing it, I believe, as something that we discussed in private, and that's not what happened in private. And this is the question. But she apparently said that's something to do with what we discussed in private. At least, I gather what happened was he said, does anybody have any bad experiences? And she had quite a reaction. I don't know what that means. I don't know if she said anything. And then she said that's – she said that's something to do with what we discussed in private yesterday. Is that wrong? And then he goes on to say the answer to my question, and I take it the question is, does anybody have personally any bad experiences or negative feelings towards law enforcement? Suffice it to say the answer to my question is yes, and she said yes, there could possibly be some. I'm sorry. Okay. And is that at page 139? I'm sorry. I'm not tracking exactly where you're referring to this in the record. I'm sorry. I note to say 143. So it's 143. This is one of those ones where you have, like, multiple competing fighting numbers. Yes. But it's in the bottom right-hand corner, 142 over 2. I guess 143. So if you look at the top of page 143. I am – I'm corrected, yes. She said it's something to do with what we discussed in private yesterday. And he says – and he says suffice it to say my answer is yes, and she said possibly some. He doesn't explore that whatsoever in terms of possibly some. Now, what she had described in private, and this is part of the context, is that she had been a victim of two different crimes, one in 1978 and one 12 years earlier. And when questioned in private by the judge, she said there's nothing from those circumstances that would affect my judgment so long as this is not a sexual assault case. And the judge questioned her very clearly on that, and that there was nothing about that whatsoever in terms of – I'm saying connected to that, I had some negative experiences. So what I'd like to know is let's assume – and then they never really followed that up. But let's assume that there was one valid reason then, that one, okay? And a bunch of other ones that seem shaky. All right, what do we do with that analysis? How does that come out? Is the court trying to do a mixed motive? No. Well, it's not exactly that, because it's really a question of do we infer pretext at that point or don't we? We have a new case called Cook v. Lamarck, which deals with the mixed motive issue and says it has to be a substantial motivating factor. So ultimately that is the question. In other words, if you have – assuming that there were four reasons and three of them don't stand up, but one of them does, how does that feed into the Cook v. Lamarck standard? Well, certainly the very first reason, in terms of primacy, the first reason he gives is the reverse psychology. She could be favorable to me or, you know, here's a black woman who's been a victim of a crime by black people. It's – and she's assured the court that she can put that aside. So you can't say that it's not a substantial factor when that's his – you know, that's his last reason, not his first reason, as part of my analysis. And also, in terms of, you know, the cases say that if the prosecutor doesn't ask a question – and this is vaguely in that area – it's something to do with what we discussed in private, and he knows what they discussed in private. It didn't have to do with law enforcement. It had to do with this other situation. Okay. I hope you're going to get a chance to address the admonition to the jury to put their life experience in a box. Well, you know, in private, Ms. Dee did address that with the court because she was concerned about understanding that, because she said, my life experience is the basis for counseling. I know, but I mean generally, as the standard given the jury. Well, I'm most concerned about this issue, and I'd like to keep my focus on that, and I'll try to get to that issue. But you're close to out of time. Go ahead. I'm aware of Cook v. Lamarck, and one concern I have is that that decision points out that some circuits follow mixed motive, other circuits look for substantial factor, and under AEDPA, if it's not clearly stated as a ruling from the United States Supreme Court, then it's a rule of the Third Circuit. It is not applicable as the standard in this case. What's not applicable? Mixed motive. It's not applicable because Cook v. Lamarck said it's not applicable, so let's take that as a case. That was a habeas case. Let's take that as given. Then what? In this case, you have race, which is a substantial factor. And Cook was reading that as having been established by the Supreme Court. Yes, but there's still sort of a logical gap because we have to, since we don't have any direct evidence, we have pretext questions. And the question is, what does one get in terms of inferring a racial motive from three bad reasons and one good one? Does that lead to an inference of pretext or partial pretext or what? Well, in this case, in terms of his description and his reasons, it's hard to parse out that there are six, seven, you know, whatever you want to count. We know that that was his last reason, which may have been, have some validity, but he completely mischaracterized when she responded. He says she responded positively. Do you think just because of his race, he is more likely innocent? And that's absolutely contrary to what it says in the examination. And that's at page 141, that she knew someone who had been arrested as driving while black or brown. It can be a problem because of some officers. And she acknowledged that it does happen, but that doesn't mean the defendant in this case is guilty or not guilty, because she doesn't know about this arrest and that race would not be the matter. And I also want to point out, in terms of the Attorney General raising forfeiture, that there is no absolute rule, even if it is a rule of court that says that a petition for re-hearing must be filed as a matter of policy, the rule also includes the word normally. And so it's not evenly applied in terms of the Gatlin decision. And in this case, the opinion shows that the court did consider facts and rejected them. And so that's the context and why this should not be a crystal clear bar, procedural bar, because there was not a second petition for re-hearing in this case. Okay. Thank you. If you want to reserve any time. Good morning, Your Honor. David Andrew Eldridge, Deputy Attorney General for Respondent. The argument that this court can't consider law favorable to the state, unless it's from the United States Supreme Court, simply is incorrect. That is a one-way ratchet. You can deny a claim without citing a single United States Supreme Court case. So if, in fact, the law is, it has to be a substantial motivating factor. It doesn't matter where the United States Supreme Court has said it. Rather, you can find no violation. It is only when you grant the writ that there must be. Step back a minute. Are you planning to argue the merits of the Batson issue? Well, if you. Because you didn't in your brief. And, frankly, I'm not particularly likely to receive it. You didn't argue in the merits of the Batson issue at all in your brief. You just argued this procedural point. Actually, that's not correct. I argued that the state court's ruling was exemplary. You quoted the state court's ruling and you said it's reasonable, period, at the end. So if you're going to say more than that, I sort of have a problem with it. Oh, if Your Honor, I'm happy with the state court's ruling, Your Honor. So I don't have any particular desire to add more to it. So are you going to tell us why your other argument is correct? Which argument? I'm sorry. The main argument you made about Batson, which is essentially a default argument. Our argument is an exhaustion argument, Your Honor. Okay, an exhaustion argument, whatever it is. And that argument is that to the extent that when you present a claim, you must present the facts, and then you present your legal argument as to what follows from those facts. You cannot present facts to the California Supreme Court and expect them normally to consider the merits without having told the court of appeal it was wrong or committed some error in its failing to cite them or in the way it cited them. So are you claiming that the entire Batson inquiry, because it ultimately is a question of inferring a state of mind, is not exhausted to the California Supreme Court unless you file a petition for a re-hearing? Which, of course, they did. They did file a petition for a re-hearing anyway. Actually, no, not from this opinion, Your Honor. No, not to this opinion, because they'd already filed one. They filed a petition for a re-hearing. It was granted. It was re-heard, and now you're saying they had to do it again. You have to file a petition for a re-hearing from the opinion you are challenging. The opinion on re-hearing was based on changes in law, not the facts. Is there any case supporting that proposition? Which proposition? The matter of exhaustion in Federal court. The case in which any court has ever held that in order to exhaust a California case, you have to file a petition for a re-hearing from the court of appeals before you can file a petition for review with the California Supreme Court. I don't know, because I don't know if the issue was ever raised in a prior case, Your Honor. What I do know is that the rule is crystal clear, and I also know that Castile v. People says that when you raise it in the highest state court, you must do it in a... It's actually not crystal clear, because it says normally. Normally, that's right. And that's what Castile says, Your Honor. It's not enough that you could say, well, under some extraordinary circumstances they might. Rather, you must do it in the manner which they set forth. What is the fact here that they should have raised and didn't raise? Any argument they have with the state courts, the court of appeals statement of the facts, as I pointed out, there was no argument in the brief challenging the legal conclusion in light of the facts as stated by the California court of appeals. Could you be specific about that? Specific about what? Are you saying that the entire Batson determination because it's in some sense factual could not be raised to the California Supreme Court without filing a petition for rehearing? I am saying the California court of appeal gave an opinion which gave excruciating detail to the facts, including what facts were or were not supported by the record. If they had a problem with that statement of this fact is supported by the record, they had to tell the California court of appeals. They can't wait until they get to federal court and say, gotcha. Because the California Supreme Court will not consider their attack on the facts as stated by the California court of appeal unless they give the California court of appeal a chance to fix any perceived error. You can't be the first ones to go poking around at the California court of appeals opinion. Give me one example of an argument of that kind that you're saying should have been raised. An argument? A factual question that should have been raised. One example. Your Honor. An example. Your Honor, all I... I don't know if I'm prepared to do that. And the reason why is because there was no argument in the opening brief challenging the legal conclusion or in a sense the ultimate conclusion of the California court of appeal based on the facts as stated by the California court of appeal. ...is that a Batson determination is always factual in the sense that it isn't exhausted unless it is raised a second time with the California court of appeals. The whole Batson issue. That's what I'm trying to find out. I've never said that. You're not listening to me. I've never said that. Well, then give me an example. Your Honor, I don't know what example to focus on because what I pointed out in our brief is that we don't have anything to respond to in terms of why, in light of the facts as stated by the court of appeal, there's something wrong with their conclusion. So if there was an argument as to why the California court of appeals' conclusion is wrong, even in light of the facts as they stated them, that would give me something to address. But there was no argument. Rather, she's trying to get you to look at the record itself and decide what you think of the facts.  You're saying the last reasoned opinion is the California court of appeals' decision. That is the one we should look at regardless of whether the record supports the California court of appeals' decision. Oh, when you reach the merits, yes. But the problem is, to the extent you want to change those facts, you have to fairly present those to the California court of appeals. We would like to hear some argument on the other issue. I want to... Let me just start out by telling you that it concerns me a good deal. There are Supreme Court opinions saying that a jury brings its experience to the jury room. And you have a trial judge telling the jurors put your experience in a box. And it obviously made an impact on a number of jurors, some of whom were dismissed, but you could tell from their reaction that that vivid image made an impression. Now, we are reviewing the California court of appeals. You agree to that? Yes. And the way the court of appeals handles it is to say, in context, this did not mean what it seems to mean. Now, why is that... How does that make any sense? You say, in context, your life experience doesn't make... shouldn't be brought into the case. Why, in context, should your life experience not be brought in? Well, I guess I have to point out that one of the contexts is that we do have a juror that when they ask questions, the court elaborated and explained exactly... What is the context? Just tell me that. What is the context that makes your life experience irrelevant? And to be suppressed, actually. Well, to the extent, for example, your life experience might indicate to you that, as the court indicated, all people with blue eyes act in this particular way or all people with black skin act in that particular way, these are the judgments. That is the context the court is giving. Who does the judge say that to? The one juror who actually expressed... The only example I can remember is where he got mixed up or where the sun apparently sets or rises. That was a very odd thing. The judge didn't seem to know which way the expression went, whether the sun set in the east or the west. But that was a natural fact. It was a matter of usage, not of life experience. It was a very... Perhaps sadly indicative, but anyway, it didn't convey anything. And I'm asking you, not the judge, what's the context that made this intelligible? You're told to suppress your life experience. Then I say to you, in context of this court, that doesn't really mean it. How does... What does that mean? Well, I'm not sure what... The court said... Let me pull up the precise instruction. Look at the California Court of Appeal. That's what we're reviewing. Right. The court said, I'm asking you to... No, the California Court of Appeal. Look at its decision. I'm quoting from their court. I'm quoting from the trial court. All right. It's the only time you're asked all the experience you have... Sorry. I'm on page 20 of my brief. That you have had contributed to how you think about everything and how you think about and lay those experiences aside to make only your decisions based on what you hear and what goes on in this trial. Your voice is dwindling. Could you raise it, please? Sure. Keep your voice up. I will try, Your Honor. I'm sorry. It's just fading away. The floor is outside. What do you see as relevant? Well, when the court says, when you walk into this court or message, or I'm now on page 21 of the brief, you take all the decisions you've made, all the opinions you have about how people act and how people behave, what kind of people behave in that way, what makes them do that, and you leave them in the box. We call them your biases and your prejudices, and we all have them. We depend on those biases and prejudices that are normalized a lot of times, but you can't depend on them when you're a jurist. That is giving context to what you're supposed to put in the box. The court goes on to, the only thing we ask you to... That's all quote from the trial court, right? This is from the California Court of Opinion. No, it's a quotation of the trial court. Yes. Yes. Well, I think the court is saying, the California Court of Appeal is saying the very context, i.e. the other words used in the trial court's admonition gave context to what was claimed on appeal to be problematic words in the trial court's admonition. So, the other words provide the context to the challenged words. But, the only clarification that was made was made to Ms. D in the chamber, so nobody else heard it, so it was useless in terms of clarifying anything to the jury. Actually, as I believe I pointed out in the brief, there was also the later instruction by the court that the post-evidence comments were expressly targeted at bias as well. Sorry? So, the later the court     bias and prejudice as a target of bias and prejudice as a target of bias and prejudice as a target of bias and prejudice as a target of the admonition and then later after the evidence the court again points out what it's talking about is bias and prejudice the standard instructions are focusing on bias and prejudice. That is indeed some context to explain what the court meant. And, to the extent there would have been some belief that this was so strange there really needed to be an objection and I there really needed to be an objection and I point that out not as simply waiver of the claim but rather if you don't object to what the court says you abandon any right inconsistent with what the court said. It's not merely waiver of a claim. It doesn't matter if the California Court of Appeal decided they will go ahead and look at the merits of it. The fact is under the Constitution itself any right you had in contradiction to what the court said is gone.  abandoned. Whether or not the California Court still looks at the merits. We had a problem like this yesterday. My understanding is that if the Constitution    right is not a constitutional waiver, where else are you getting a constitutional waiver? It is not. I would call it an abandonment of the right. It is like a defendant sitting at trial and his opportunity for cross examination comes up and he asks no questions. Under the Constitution, even if he goes to the California Court of Appeal and says my right to confrontation was denied, the court can look at it and say we do not think it was and says we are not imposing any sort of waiver. The fact is if you don't try to take advantage of something, it is gone. It is like someone pleading guilty and saying I was denied my right to trial. It is not enough to say the court didn't impose a procedural bar. If the right itself requires some action under the Constitution, then the right is gone when you don't take that action. Let's assume the issue is there. The California Court of Appeal described this admonition as a bit odd or rather odd. Would you agree that to that? I think it is a bit odd, yes. Would you agree that it is contrary to the way the Supreme Court has stated what a jury should be like? I would not because I don't see any case clearly establishing just what you are entitled to in terms of jury experience. If something is stated positively as the way a       is? No. It doesn't say what the difference is. It doesn't say what the difference is. It doesn't say  the difference is. I don't think it necessarily does. Beyond that, I'm not sure exactly what supposedly the Supreme Court has said so clearly establishing the right here. The one juror who expressed her understanding of this was Ms. G. in Chambers. She said quite sensibly something to the effect of you say I'm supposed to use my common sense but my common sense is all my  common sense is not  ominous. It  be severe and painful for the inmate. As the Supreme Court found it to be odd, and as I said, it may be interesting as to what a reasonable doubt instruction says wouldn't be sufficient to overcome it if there were. That too is part of the context in this court case. Considering all the evidence doesn't overcome the question of how you're supposed to consider it. You're supposed to consider it in a vacuum as opposed to against your life experience. Those are two different things. But  that somehow any juror can bring any level of life experience to the case, and more so This is always an interesting and difficult question as to how much life experience. And the lines seem to cut off at kind of detailed analogous questions. I always think of 12 Angry Men and how people in that portrayed deliberation certainly brought their life experience sometimes, and there's a debate about whether they did so improperly. But still, the notion that you can't use any life experience is a different notion from where the cutoff point is. Well, the very fact that you're supposed to use common sense tends to undermine the notion that you wouldn't be able to use anything because otherwise where would your common sense be? It was so understood by one potential juror, and she was therefore baffled about what she was supposed to do. And that juror spoke up. The mere fact that one juror spoke up doesn't imply that somehow that juror is representative of all the jurors. But the core point that you said this is always an interesting question, and if it's close, that's precisely what precludes relief on federal habeas. Because you don't get to decide novel and interesting questions. Rather, unless the answer is clear, clearly established from the United States Supreme Court authority... What is an interesting and difficult question is at what point the reliance on very specific life experiences goes too far, not the question of whether you're supposed to ignore all your life experiences. Anyway, you've done a Oh, you're over your time. I thank you for your argument. It was useful. You have a minute, and we'll give you about four because you went about five minutes over. Well, I simply wanted to point out that the context of this instruction is, again, primacy. At the very beginning of jury selection, the judge is pointing this out, and she's pointing it out in the context of, I do this with almost all my juries. And on direct appeal, this issue was raised, and it was raised under penal code 1259, which allows the litigant to raise an issue affecting the substantial rights of the defendant. And the court of appeal acknowledged that that waiver issue, forfeiture, whatever you want to call it, that that objection had been made, but they still ruled on the issue. I'm not saying they ruled on it correctly, but in terms of the merits it was addressed. And so you can't now still apply the same kind of bar at this level. And it would have been futile to object, which is typically the response, but this is one where she says, I tell this to all my juries. I looked at the cases you cited, the Supreme Court cases. There's a site to JEB, which is Justice O'Connor's concurrence, and the Supreme Court has said that we're to look at the holdings, not dicta. So that is not clearly established. I looked at Beck, which had a quote from Alabama Supreme Court Justice Schor's dissent in a different context, and I looked at Head v. Hargrave, which was a civil case discussing expert opinions. So given the recent direction we've had from the Supreme Court and Ms. Ledeen and Wright v. Van Patten, that the Supreme Court precedent really has to be pretty close on point, where would we find a Supreme Court precedent that would say the type of instruction was a violation? Well, we don't have a precedent that would  the Supreme Court precedent would be a violation of the right to a jury of one's peers. And maybe there hasn't been such a case, but this comes under those very broad principles of the right to a jury rather than a trial by a single judge, that you're entitled to a jury of your peers who bring their life experience. I believe I failed to point out that the Hernandez case that the Attorney General, the Supreme Court case, that the Warden relies on to say that Rule 8.500 dealing with petitions for rehearing is a matter of policy, that decision was from 2007. And that there are earlier cases that preceded the 2006 petition for review in this case. And in those cases, the Supreme Court said, well, there was no petition for rehearing, so we relied primarily on the court statement of facts, though we supplemented with our own close and thoughtful question not raised. And it was raised in this case. And with that, I believe I'm down to nine seconds. Thank you very much. Thank you to both counsel for respective arguments in an interesting case. Taylor v. Sisco is submitted, and we are in recess until tomorrow. Thank you.
judges: Noonan, Berzon, Ikuta